## J. F. TRIMMERS V. THE STATE

No. 20039.   Delivered January 25, 1939.
Rehearing Denied March 8, 1939.

The opinion states the case.

*W. W. Kirk,* of Plainview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—Theft of a horse is the offense; penalty assessed at confinement in the penitentiary for five years.

R. W. Johnston lived in the northeast part of Castro County where he was engaged in farming. On or about the 4th day of March, 1935, he owned a black stud horse which was two and one-half years old, about fifteen and one-half hands high and weighed about 1200 pounds. Johnston described the animal as follows: "He was black with the two back feet was white, a star in his forehead, and a nip on his nose slightly turned to one side. The two back feet were white from the hoof to just above the ankle. Except the place in his forehead and the snip on his nose and his two back feet, his color was black."

The horse was in a 23-acre pasture which was within a 320-acre wheat field. On the date mentioned, Johnston was gone from his premises all day. When he left that morning, the horse was in the field, but when he returned the following day, the animal was gone. While searching for the horse, Johnston found some tracks in the field which had been made by a two-wheel trailer. There were horse tracks but the wind had blown so hard that Johnston was unable to tell the size of them. However, he followed the trailer tracks until they led in the road west of the field, after which he could not tell in what direction they went. From the testimony of the witness we quote: "I talked to J. F. Trimmers last summer sometime out at his place which is north and east of here. * * * I said something to him about the taking of this horse. I asked him how come him to take my horse when there was plenty of other

horses around. He said, 'We just thought you were able to stand it.' I asked him at that time about what he was going to do about the other fellows that helped him. He said, 'You can't do anything to Jess. It may cost him a little money.' He was talking about the boys that helped him load it."

Dr. G. A. Hughes, a resident of Siloam Spring, Arkansas, testified that during the spring of 1935 his son-in-law, Jack Walker, lived on one of the farms belonging to the witness; that Walker had a pair of mules which belonged to him (Hughes) and a young Percheron stallion which the appellant tried to sell him. The stallion was described as "black with a white spot in his forehead, a wide snip on the end of his nose, both hind ankles of the hind legs were white, covered with white hair to about the ankles, from the hoof to above the ankles." The price asked for the horse by the appellant was $150.00. However, the witness did not buy the animal. The witness testified that it must have been about the last of April or the first of May when appellant talked to him about the sale of the horse.

The witness, J. J. Mundell, testified that he was a brother-in-law of the appellant; that he lived with the appellant and did some farm work for him about the time of the alleged offense; that appellant owned a four-wheel trailer and also used a small trailer which he borrowed from one, John Lemmon. According to the witness, the small trailer was large enough to haul a horse in and that appellant did use it for hauling stock. Mundell testified that he remembered when Robb Johnston came to the appellant's place in the spring of 1935 and reported the theft of a black stud horse; that appellant left early that morning and told Mundell that he was going on a trip. According to the witness, "There wasn't very much difference in the time when Trimmers left and Johnston came over." The witness did not see a trailer with a black stud horse in it attached to the appellant's car when he left. However, the witness stated that there were trees on the place behind which the appellant could have hid the trailer. After leaving home, the appellant was gone for several days.

The State introduced in evidence, for the purpose of enhancing the penalty, certified copies of the information, judgment and sentence, as well as the opinion of the Court of Criminal Appeals of Oklahoma, showing that the appellant was convicted in said state in February, 1923, of the offense of burglary and condemned to suffer confinement in the state penitentiary for a period of three years. The introduction of

the evidence in question was to support the allegation of the indictment in the present instance as to the former conviction of the appellant of a felony.

W. H. Dean, a resident of Cordell, Oklahoma, testified that he was sheriff of Washita County, Oklahoma, in 1923; that he knew the appellant at that time and knew him at the time of the present offense; that the Fount Trimmers who was convicted of burglary in Oklahoma in February, 1923, is the same person as the appellant in the present prosecution. The witness identified appellant upon the trial as the same person who was convicted in Oklahoma in 1923.

Appellant's exceptions to the admission in evidence of the documents relating to his former conviction of the offense of burglary in the State of Oklahoma passed out of the case by the jury's verdict. If the jury had found that he was the person who was theretofore convicted of the offense of burglary in the State of Oklahoma, they could not, under the law and the court's charge, have assessed his punishment at less than ten years; but they assessed his punishment at five years, which is tantamount to finding him guilty only of the offense charged in the instant case. Therefore, we need not discuss these questions.

By Bill of Exception No. 3 appellant complains because the court declined to submit his special requested instruction to the effect that if the jury believed and found from the evidence that he did not participate in the original taking of the alleged stolen horse and was not present at the time it was taken, if taken, and did not aid, abet or encourage others to take said horse, but received the same outside of Castro County after it was taken, if taken at all, to acquit him. If such an issue had been raised by the testimony, then he would have been entitled to such an instruction and no doubt the court would have responded to his request. But we fail to find any evidence in the record which raises the issue. Consequently, the court was correct in declining to submit the same.

By Bill of Exception No. 4 appellant complains because the court declined to give his special requested instruction on the law of circumstantial evidence. If this case rested on circumstantial evidence alone, he would have been entitled to such an instruction, but such is not the case. Mr. Johnston testified that during the summer preceding the trial of this case, he talked to appellant about the horse; that he asked him why he took his (Johnston's) horse when there were plenty of other horses around, to which appellant replied: "We just thought you were able to stand it." This was an admission on the part

of the appellant that he, acting with others, took the horse. We think this testimony takes the case out of the realm of circumstantial evidence. In support of our conclusion we refer to the following cases: House v. State, 19 Tex. Cr. App. 227; Bailey v. State, 260 S. W. 1057, and authorities there cited.

By Bills of Exception Nos. 6 and 7 appellant complains of the closing argument of the district attorney wherein he used the following language: "He (pointing to appellant with his finger) is the same Fount Trimmers who went to the penitentiary from Oklahoma on a charge of burglary."

The objection urged thereto was based on the ground that the argument was not warranted by the evidence and was prejudicial to the rights of the defendant. We are unable to agree with him. The Sheriff of Washita County, Oklahoma, testified without objection that appellant was the same person who, in the month of February, 1923, had been convicted in the District Court of Washita County, Oklahoma, of the offense of burglary. This testimony was admitted for the purpose of enhancing the punishment in case of conviction on the charge for which he was being tried. Consequently, there was evidence which justified the remarks complained of.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—After carefully re-examining the record in the light of appellant's motion for rehearing we are constrained to adhere to the conclusion expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.